

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

JOHN L. HILL,
ATTORNEY GENERAL

January 27, 1976

The Honorable Bevington Reed
Commissioner, Coordinating Board
Texas College and University
    System
P. O. Box 12788, Capitol Station
Austin, Texas   78711

Opinion No. H-772

Re:  Whether certain
university groups are
required to hold open
meetings.

The Honorable Grover E. Murray
President
Texas Tech University
P. O. Box 4349
Lubbock, Texas   79409

Gentlemen:

    You have asked our opinion on the applicability of the
Texas Open Meetings Act, article 6252-17, V.T.C.S., to
meetings of particular bodies.  Dr. Reed asks if the meetings
of the general faculty of a state-supported college or
university are covered by the Open Meetings Act.  Dr. Murray
asks if the meetings of the Texas Tech University Athletic
Council are covered by the Act.

    The extent of the Open Meetings Act's coverage is
established in the definitions of "governmental bodies" and
"meetings."  Section 1(c) of the Act provides in part:

> (c) 'Governmental body' means any board,
> commission, department, committee, or
> agency within the executive or legislative
> department of the state, which is under
> the direction of one or more elected or
> appointed members. . . .

Section 1(a) of the Act provides in part:

>(a) 'Meeting' means any deliberation
>between a quorum of members of a govern-
>mental body at which any public business
>or public policy over which the govern-
>mental body has supervision or control
>is discussed or considered, or at which
>any formal action is taken.

Thus, it is apparent that before the Act is applicable to a meeting of a statewide public body, five prerequisites must be met.   These are:

>(1)   The body must be an entity within
>the executive or legislative department
>of the state;

>(2)   The entity must be under the control
>of one or more elected or appointed
>members;

>(3)   The meeting must involve formal
>action or deliberation between a quorum
>of members. Compare Attorney General
>Opinions H-238 (1974) and H-3 (1973)
>holding that meetings of committees
>consisting of less than a quorum of the
>parent body must be open;

>(4)   The discussion or action must
>involve public business or public policy;
>and

>(5)   The entity must have supervision or
>control over that public business or
>policy.

We believe it is clear that the first, third and fourth of these tests are satisfied in each of the cases about which you inquire.   It is necessary, however, to determine (1) whether these two bodies are under the direction of one or more elected or appointed members and (2) whether they discuss business or policy over which they have supervision or control.

We believe the Legislature's use of the word "appointed" in this context was designed to signify something more than normal employment. We are supported in this belief by the proceedings on the floor of the House of Representatives on January 29, 1973, when the bill providing for substantial changes in the law was being debated. Acts 1973, 63rd Leg., ch. 31, p. 45. The author of the bill explained that the word "member" in section 1(c) was not intended to include staff. A colloquy between Representative Poff and the author of the bill, Representative Parker, used the Insurance Commission as an example and indicated:

> Poff: Mr. Parker, in your defini-
> tion of the word member aren't you
> excluding staff? Now that was the way I
> understood it. When you talk about a
> quorum of members, you don't mean to
> cover staff do you?
>
> Parker: No.
>
> Poff: All right, that was the way
> I understood it. So by 'member' you
> mean the actual Insurance Commissioners.
> Now if they all get together with some
> staff you've got a quorum of members
> plus its staff. But as long as its just
> employees you're not going to make it an
> open meeting, right?
>
> Parker: Mr. Poff, your astuteness
> sometimes amazes me.

Accordingly, we believe that where the general faculty of an institution is solely a group of employees, as would normally be the case, its meetings are not covered by the Open Meetings Act.

With regard to the Athletic Council at Texas Tech University, Dr. Murray informs us that the Council consists of nine members appointed by the President, who is the chief executive officer of the University. Texas Education Code § 109.23. We have previously held that the University of Texas Athletics Council includes appointed members. Attorney General Opinion H-438 (1974). That Council included five members appointed by the President of the University and two members appointed by the Board of Regents. Furthermore, the State Textbook Committee has been found to be composed of appointed members. Attorney General Opinion M-136 (1967). That Committee was composed of persons nominated by the Commissioner of Education and approved by the State Board of Education. Acts 1949, 51st Leg., ch. 299, p. 537 at 542. Accordingly, it is our opinion that the Athletic Council at Texas Tech University is composed of one or more appointed members.

The remaining question is whether the Athletic Council has supervision or control over public business or policy.

The Texas Tech University Board of Regents has adopted a resolution which provides:

> Resolved that the Board of Regents of Texas Tech University does hereby declare that it shall continue to exercise its exclusive statutory authority to govern, control and direct the policies for the Department of Athletics and all other intercollegiate athletic programs of the University, within the regulations of the NCAA and Southwest Conference as accepted by the Board;
>
> And it is further Resolved and declared by this Board, that it shall continue to exercise its exclusive and final authority to supervise and control all matters concerning the public business and internal affairs of the Department of Athletics and all other intercollegiate athletic programs of the University;

And it is further Resolved that the
Athletic Council of the University may
review and make recommendations to the
Office of the President of the Univer-
sity on any matters pertaining to the
enforcement of eligibility rules and
regulations established by any athletic
conference or national association in
which the University holds membership.
Also, the Athletic Council may review,
offer suggestions and make recommendations
on any pertinent matters related to the
University's intercollegiate athletic
program, however, such recommendations
and suggestions shall be made to and
channeled through the Office of the
President of the University, and it is
further specifically provided that the
Athletic Council shall not have final
authority to direct, control or super-
vise the operation or activities of the
Department of Athletics or intercollegiate
athletic programs of the University.

Furthermore, Dr. Murray advises us that:

The Athletic Council at this University
has no authority to hire or fire the
Athletic Director, coaches or staff
personnel. Personnel contracts are made
by and between the individual and the
University. The Athletic Council has no
power or authority, delegated or other-
wise, to contract with any person, group
or corporation concerning athletics.
The Council has no authority to direct,
control or supervise athletics or anything
else on this campus either by statute or
Board authority. The Athletic Council's
advice and recommendations are not a
prerequisite to action by either the
Board or the Administration on a matter
concerning athletics at this University.

Thus, both the structure of the Council and the resolution granting it power indicate that the Texas Tech Athletic Council is an advisory body and has no power, actual or implied, to supervise or control public business. Compare Attorney General Opinion H-438 (1974), where the structure of a similar body and all briefs submitted to the Attorney General on behalf of that body indicated that it exercised supervisory authority over public business or policy. We cannot resolve disputed questions of fact, and we necessarily have relied on the facts presented by the University. According to those facts, the "meetings" of the Texas Tech Athletic Council do not meet the definition of that term set out in the Open Meetings Act, and its proceedings would not be required to be held in conformity with the dictates of that Act.

However, we strongly caution that should the Council actually function as something more than a merely advisory body with the result that it in fact supervises or controls public business or policy, it would have to comply with the mandate of the Open Meetings Act regarding public notice and open meetings, and in that instance, its members may be subject to sanctions imposed for failure to comply with the Act. Open Meetings Act, V.T.C.S. art. 6252-17, § 4; Attorney General Opinion H-467 (1974).

## S U M M A R Y

A meeting of a group of employees such as the general faculty of a state college or university is not covered by the Open Meetings Act.

Under the facts presented here, the Texas Tech Athletic Council is not required to conduct its meetings under the dictates of the Open Meetings Act so long as it has no supervision or control, actual or implied, over public business

or policy. If it in actuality supervises
or controls public business or policy, it
must comply with the mandate of the Act
and in that instance its members may be
subject to the sanctions of the Act for
any failure to comply.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb